**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| USA-HALAL CHAMBER OF COMMERCE, INC. a Maryland corporation, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 1:19-cv-04693 |
| v. | ) ) | The Honorable Marvin E. Aspen |
| BEST CHOICE MEATS, INC., an Illinois corporation, | ) ) ) | |
| Defendant. | ) ) | |

**PLAINTIFF'S MOTION FOR A TEMPORARY
RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

NOW COMES Plaintiff, USA-Halal Chamber of Commerce, Inc. ("USA Halal" or "Plaintiff"), by and through its attorneys, and for its Motion for a Temporary Restraining Order and Preliminary Injunction (the "Motion") against Defendant, Best Choice Meats, Inc. ("Best Choice Meats" or "Defendant"), states as follows:

**INTRODUCTION**

USA Halal seeks a temporary restraining order and preliminary injunction enjoining Best Choice Meats from using USA Halal's trademarks (the "Trademarks") in violation of the federal Lanham Act, 15 U.S.C. § 1051, *et seq.*, the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2, and the Illinois Trademark Registration and Protection Act, 765 ILCS 1036/65. The injunctive relief requested below is allowed under each of these statutes, which are set out in Counts I-IV and VI of the Verified Complaint.

USA Halal inspects and, where appropriate, certifies meat and poultry products for distributors and retailers across the United States. A Halal certification assures consumers that the meat or poultry they purchase has been slaughtered and prepared in accordance with Islamic law

that has been passed down for countless generations. Consumers equate USA Halal's trademarks with an assurance that the meat and poultry they purchase and eat is Halal.

Best Choice Meats is a meat and poultry distributor in Alsip, Illinois. USA Halal certified Defendant Best Choice Meats' poultry products from late 2015 until June 2018, when it suspended and ultimately terminated Best Choice Meats' right to display USA Halal's Trademarks on its products. Nevertheless, Best Choice Meats continues to use USA Halal's Trademarks by displaying various products with the Trademarks on its Web site and, on information and belief, selling those products to unwitting customers. Best Choice Meats' ongoing conduct is as illegal as it is brazen. Through this Motion, USA Halal seeks temporary and preliminary relief that, at a minimum, requires Best Choice Meats to immediately desist from using USA Halal's Trademarks.

USA Halal has satisfied all elements entitling it to this relief. First, USA Halal is likely to succeed on the merits because it lawfully terminated its certification of Best Choice Meats on September 18, 2018, and rescinded Best Choice Meats' right to use its Trademarks. However, Best Choice Meats continues to place USA Halal's certification and Trademarks on its Web site and, on information and belief, on products it sells to the public. Second, USA Halal will suffer irreparable harm if this Court does not grant it injunctive relief. Best Choice Meats' continued willful infringement and dilution of USA Halal's Trademarks threatens to permanently damage the value of the Trademarks. Third, USA Halal does not have an adequate remedy at law; monetary damages are insufficient to remedy Best Choice Meats' continued willful infringement and dilution of USA Halal's Trademarks. Fourth, the balancing of equities in this case heavily favors USA Halal, given the irreparable harm USA Halal faces. The only burden on Best Choice Meats is to cease using USA Halal's Trademarks without permission. Unchecked by this Court, Best Choice Meats will surely continue to infringe upon USA Halal's Trademarks. And, fifth,

injunctive relief would serve the public interest by ensuring consumers can continue to rely on USA Halal's Trademarks as an assurance that the meat and poultry they consume has been slaughtered and prepared in accordance with Islamic law.

USA Halal seeks a hearing on its request for temporary injunctive relief at the Court's earliest convenience.

## FACTS

USA Halal certifies meat and poultry products that comply with U.S. and international Halal standards. <u>See</u> Verified Complaint ("Complaint") at ¶ 17, attached hereto as **Exhibit A.** USA Halal annually certifies millions of pounds of meat and poultry for hundreds of distributors and retail clients in the United States. *Id.* at ¶ 19. Many thousands of consumers eat USA-Halal-certified meat and poultry every day. *Id.* at ¶ 20. USA Halal's clients pay inspection fees, along with additional fees of two or three cents per pound of meat sold by the clients. Since 1997, USA Halal has built an international reputation for quality, integrity, and reliability. *Id.* at ¶ 18. Consumers equate a USA Halal trademark on a package of meat or poultry as an assurance that the food they eat is Halal. *Id.* at ¶ 18.

USA Halal is the record owner of several federal trademarks, including U.S. Registration Numbers 4311881, 4285198, 4285197, 4323111, 4323112, and 4323113 (collectively the "Trademarks"), which include the words, letters, numbers, design, and stylized words associated them. *Id.* at ¶ 22-23, and **Ex. 1** thereto (Certificates of Registration). USA has had exclusive control over its Trademarks for decades. The Trademarks are incontestable. *Id.* at ¶ 24, and **Ex. 2** thereto (Combined Declarations of Use and Incontestability).

Best Choice Meats is a meat and poultry distributor in Alsip, Illinois. *Id.* at ¶ 8. Between about December 1, 2015 and May 31, 2018, Best Choice Meats contracted with USA Halal to

inspect and certify Best Choice Meats' products as Halal, as well as license Best Choice Meats to display USA Halal's Trademarks on Best Choice Meats' products and Web site. *Id.* at ¶ 31.

Following its customary inspection and investigation of Best Choice Meats' products and procedures, USA Halal certified Best Choice Meats' products as Halal.[1] *Id.* at ¶ 21, 30. USA Halal also allowed Best Choice Meats to promote its products with USA Halal's Trademarks, so long as Best Choice Meats continued to satisfy the criteria for Halal certification and its other contractual duties to USA Halal. The parties' respective obligations to each other are set out in the Terms and Conditions to which Best Choice Meats agreed as early as August 23, 2016. *Id.* at ¶ 32 and **Ex. 4-5** thereto (Renewal Application and Terms of Service).

On May 30, 2018, USA Halal suspended its certification of Best Choice Meats, and prohibited it from selling products bearing the Trademarks and displaying the Trademarks on its Web site. *Id.* at ¶ 34 and **Ex. 6** thereto. USA Halal took this action because Best Choice Meats failed to comply with various parts of the Terms of Service. *Id.* at ¶ 34-36. Best Choice Meats' most serious breach was its failure and refusal to disclose how much meat and poultry it was selling with USA Halal's Trademarks. *Id.* at ¶ 34. Best Choice Meats failed to bring itself into compliance, and USA Halal permanently terminated Best Choice Meats' certification and its right to use the Trademarks on its products or Web site on September 18, 2018. *Id.* at ¶ 37-38 and **Ex. 7** thereto.

Upon being informed that it was prohibited from selling products bearing the Trademarks and displaying them on its Web site, Best Choice Meats replied that it no longer required USA Halal's services, was being certified by another organization, and had never used any of USA Halal's Trademarks on its product packaging. *Id.* at ¶ 40 and **Ex. 8** thereto. Best Choice Meats

---

[1] USA Halal was only retained to inspect Best Choice Meats' poultry products. USA Halal did not certify any other products. *Id.* at ¶ 45 and **Ex. 10-11** thereto.

made these representations despite the fact that its own Web site confirms that it has used—and continues to use—USA Halal's Trademarks on its packaged food. *Id.* at ¶ 44 and **Ex. 9** thereto (2019 Web site display showing poultry products with USA Halal's Trademark).

Best Choice Meats further promised to remove any reference to USA Halal from its Web site and/or social media. *Id.* at ¶ 40 and **Ex. 8** thereto. On information and belief, even after the termination of its Halal certification, and despite Best Choice Meats' assertion to the contrary, it has continued to market, distribute, offer for sale, and sell meat or poultry products bearing the Trademarks. *Id.* at ¶ 41-42. Indeed, Best Choice Meats continues to promote dozens of products on its Web site that bear USA Halal's Trademarks. *Id.* at ¶ 44 and **Ex. 9** thereto (2019 Web site display showing poultry products with USA Halal's Trademark).

Further, Best Choice Meats only received certifications on its poultry products. However, on information and belief, it has used the Trademarks to sell other meat products, such as beef patties. *Id.* at ¶ 45, and **Ex. 10** (USA Halal certifications for Best Choice Meats) and **11** (2019 Best Choice Meats web site display of beef patties) thereto.

On May 13, 2019, USA Halal contacted Best Choice Meats and requested it to cease using USA Halal's certification on its products and Web site. *Id.* at ¶ 46 and **Ex. 12** thereto (May 13, 2019 e-mail correspondence between USA Halal and Best Choice Meats). Later that day, Best Choice Meats apologized and promised to remove all references to the Trademarks from its Web site "immediately." *Id.* at ¶ 46 and **Ex. 12** thereto. Nevertheless, Best Choice Meats has not removed the Trademarks from its Web site, and on information and belief continues to market, distribute, offer for sale, and sell meat and poultry products bearing the Trademarks. *Id.* at ¶ 47. Best Choice Meats' misuse of USA Halal's Trademarks is undoubtedly misleading consumers

who have come to rely on USA Halal's Trademarks as a guarantee that the meat and poultry they consume is Halal. This conduct should not go unrebuked.

## ARGUMENT

The purpose of temporary or preliminary injunctive relief is "to minimize the hardship to the parties pending the ultimate resolution of the lawsuit." *LHO Chicago River, L.L.C. v. Rosemoor Suites, L.L.C.*, No. 16 C 6863, 2017 WL 467687 at \*3 (N.D. Ill. Feb. 3, 2017). A party seeking a temporary restraining order or preliminary injunction must show (1) that its case has some likelihood of success on the merits and (2) that it has no adequate remedy at law and will suffer irreparable harm if an injunction is denied. *Stuller, Inc. v. Steak N Shake Enterprises, Inc.*, 695 F.3d 676, 678 (7th Cir. 2012); *Illusions Too Reality, LLC v. City of Harvey*, No. 02 C 7272, 2003 WL 260335 (N.D. Ill. Feb. 4, 2003) (saying that the standards for a TRO and preliminary injunction are "functionally identical" in the Seventh Circuit).

If the moving party meets these threshold requirements, the district court should also consider the irreparable harm that the nonmoving party will suffer if temporary and preliminary relief is granted, balancing such harm against the irreparable harm the moving party might suffer if relief is denied. *Id.* Finally, courts consider the potential effect on the public interest in denying or granting the injunction. *Ty, Inc. v. The Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001). The Court then weighs all of these factors, "sitting as would a chancellor in equity," in deciding whether to grant an injunction. *Id.* The district court's weighing of the facts is not mathematical in nature; rather "it is more properly characterized as subjective and intuitive, one which permits district courts to weigh the competing considerations and mold appropriate relief." *Id.* at 895-96.

In the trademark infringement context, "some likelihood of success on the merits" simply means a "better than negligible" chance of prevailing. *Id.* at 897. Further, a trademark

infringement plaintiff seeking injunctive relief is <u>presumed</u> to have been irreparably harmed and to lack an adequate legal remedy. *Champion Roofing, Inc. v. Champion Window Mfg.*, No. 13 C 5478, 2013 WL 6669476, at *5 (N.D. Ill. Dec. 16, 2013); *Wm. Wrigley Jr. Co. v. Swerve IP, LLC*, 900 F. Supp. 2d 794, 803 (N.D. Ill. 2012); *see also Promatek Indus., Ltd. v. Equitrac Corp.*, 300 F.3d 808, 813 (7th Cir. 2002) (saying "it is well settled that injuries arising from Lanham Act violations are presumed to be irreparable"). The balancing of irreparable harms is done on a sliding scale; the more likely the plaintiff will succeed on the merits, the less the balance of irreparable harms need favor the plaintiff's position. *Ty, Inc.*, 237 F.3d at 895; *Storck USA, L.P. v. Farley Candy Co.*, 14 F.3d 311, 314 (7th Cir. 1994) (if the likelihood of success is high, the balance of harms is less significant); *LHO*, 2017 WL 467687 at *3.

USA Halal has established a likelihood of success on the merits that far surpasses the "better than negligible" threshold. The validity of USA Halal's Trademarks, USA Halal's right to terminate Best Choice Meats' use of the Trademarks, and Best Choice Meats' infringement upon the Trademarks are not in serious dispute. Best Choice Meats has already admitted that it is in the wrong, and promised to cease using the Trademarks. It simply does not wish to do what it promised to do. *See* **Ex. A** *(*Ver. Complaint*)* at ¶ 46-47 and **Ex. 12** thereto.

As a matter of law, substantial irreparable harm from Best Choice Meats' unauthorized and uncontrolled use of the Trademarks must be presumed. This immediate, inevitable, and irreparable injury overshadows any insignificant inconvenience Best Choice Meats may experience from the entry of a temporary restraining order and preliminary injunction. Finally, an injunction is needed to protect the public from deception and confusion: consumers who wish to purchase and eat food certified as Halal by USA Halal are entitled to rely on the Trademarks as an assurance that the food is in fact certified as Halal by USA Halal. Accordingly, the Court should issue a temporary

restraining order and preliminary injunction that bars Best Choice Meats from using USA Halal's Trademarks for any purpose.

**I.      USA Halal is likely to succeed on the merits because Best Choice Meats' own Web site shows it is infringing upon USA Halal's Trademarks, and Best Choice Meats has freely admitted its misconduct.**

The Lanham Act "provides national protection of trademarks in order to secure to the owner of the mark the goodwill of his business and to protect the ability of consumers to distinguish among competing producers." *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 198 (1985). The Act thus proscribes any "reproduction, counterfeit, copy, or colorable imitation" of a registered trademark if doing so is "likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1). To demonstrate actionable infringement, a plaintiff must establish (1) ownership of a valid and protectable trademark, and (2) the infringement of the trademark. *Platinum Home Mortg. Corp. v. Platinum Fin. Grp., Inc.*, 149 F.3d 722, 726 (7th Cir. 1998); *LHO* 2017 WL 467687 at *3. The facts set out below and in the Verified Complaint plainly establish that Best Choice Meats has violated, and continues to violate, the Lanham Act by infringing upon USA Halal's Trademarks. The Lanham Act was enacted to rebuke this sort of conduct, and injunctive relief should follow accordingly.

A federal trademark registration itself "shall be prima facie evidence of the validity of the registered mark ... and of the registrant's exclusive right to use the registered mark in commerce on in connection with the goods and services specified in the registration." 15 U.S.C. § 1115(a). USA Halal's right to the Trademarks is nearly iron-clad because the Trademarks are—and have been for years—incontestable pursuant to 15 U.S.C. § 1065.[2] That Best Choice Meats is infringing

---

[2] 15 U.S.C. § 1115(b) states a handful of exceptions to the incontestability principle. None of the exceptions applies here. In particular, there is no plausible contention that USA Halal's distinctive Trademarks are

upon the Trademarks and confusing consumers is clear from the undisputed sworn testimony before the Court. The Court need not and should not go any further to find a likelihood of success on the merits.

Beyond their incontestability, the Trademarks are distinctive and inherently "suggestive." That is, they are not generic or purely descriptive—and they therefore deserve strong protection under the Lanham Act. Where, as here, "the mark stands for an idea which requires some operation of the imagination to connect it with the goods, it is suggestive" and entitled to trademark protection as a matter of law. *Ty, Inc. v. Jones Group, Inc.*, 98 F. Supp.2d 988, 994 (N.D. Ill. 2000) (saying "terms that are either suggestive, arbitrary or fanciful are automatically entitled to trademark protection because they are inherently distinctive."), citing *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 767-68 (1992).[3] The unique symbols in USA Halal's Trademarks impart information that does not describe the specific contents of the packaged products to which the Trademarks are affixed. Rather, through an act of imagination or visual association, consumers recognize the Trademarks as USA Halal's certification that the products they buy and consume conform to Islamic standards that are over a thousand years old. This process is what the Lanham Act is meant to protect.

That Best Choice Meats has infringed upon—and continues to infringe upon—the Trademarks is not in dispute. Best Choice Meats' own Web site shows it continues to use the

---

"functional." *See* 15 U.S.C. § 1115(b)(8). A trademark may be functional if it is "essential to the use or purpose of the [certified products] or if it affects the cost or quality of the [products]." *TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23, 32 (2001). This is not the case here. The Trademarks serve only to identify the products with USA Halal and its attendant credibility and reputation for excellence.

[3] Because the Trademarks are incontestable, USA Halal need not demonstrate "secondary meaning," That is, USA Halal is not required to demonstrate that consumers associate USA Halal's Trademarks with USA Halal *per se*. *Specialized Seating, Inc. v. Greenwich Industries, LP*, 616 F.3d. 722, 724 (7th Cir. 2010). Even so, there is no dispute that consumers do in fact rely upon USA Halal's Trademarks for assurance that their meat and poultry has been slaughtered and prepared in accordance with USA Halal's rigorous certification procedures and Islamic law. *See* Ex. A (Ver. Complaint) at ¶ 18, 26.

Trademarks despite the fact that there is no longer a contract between USA Halal and Best Choice Meats. *Id.* at ¶ 44, 47 and **Ex. 9** thereto.  Best Choice Meats itself admitted over a month ago that it continues to infringe upon USA Halal's Trademarks—and falsely promised that it would desist. *Id.* at ¶ 46 and **Ex. 12** thereto.

USA Halal patently has more than a "better than negligible" chance of prevailing on its claims that Best Choice Meats has infringed, and continues to infringe, upon the Trademarks. *Ty, Inc.*, 237 F.3d at 897.  Accordingly, Plaintiff is likely to succeed on the merits of its claims against Defendant.

## II.   USA Halal will suffer irreparable harm if the injunction does not issue, and has no adequate remedy at law for Best Choice Meats' continued blatant and willful infringement and dilution of its Trademarks.

In a trademark case such as this one, irreparable harm is presumed because of the inherent "difficulty in assessing the loss of goodwill associated with trademark infringement." *LHO Chicago River, L.L.C.*, 2017 WL at *15; *see also Processed Plastic Co. v. Warner Communications, Inc.*, 675 F.2d 852, 858 (7th Cir. 1982) (saying that "…damages occasioned by trademark infringement are by their very nature irreparable and not susceptible of adequate measurement for remedy at law").

USA Halal will suffer irreparable harm if Best Choice Meats is allowed to continue using its Trademarks. USA Halal's business depends on the quality of its Trademarks, which may fall into disrepute if Best Choice Meats continues to use them without oversight.  There is also a serious and immediate risk that Best Choice Meats will use the Trademarks on products that do not comply with USA Halal's standards. Consequently, if an injunction is not issued, USA Halal's Trademarks may well become associated with products that do not meet the Halal standards certified by USA

Halal, which will cause further, permanent damage to the image of USA Halal, its Trademarks, and the credibility of its certifications.

For the same reasons, USA Halal does not have an adequate remedy at law: money damages are difficult to measure and will not wholly compensate USA Halal for Best Choice Meats' continued infringement upon its Trademarks. Money damages will not resolve any dilution of USA Halal's Trademarks, nor will they restore any damage to USA Halal's reputation should consumers begin to associate USA Halal's Trademarks with Best Choice Meats' potentially inferior and/or non-Halal products.

**III.    This Court should grant USA Halal's Motion because the balancing of equities or conveniences heavily favors USA Halal.**

As discussed above, this Court must balance the potential harm Best Choice Meats might suffer if it is enjoined from further infringing upon USA Halal's Trademarks against the irreparable harm USA Halal will suffer if temporary injunctive relief is denied. Here, the balancing test falls overwhelmingly in favor of USA Halal. The only "harm" Best Choice Meats would suffer at all is that it can no longer use or display the Trademarks on its products and Web site—something it has already admitted it has no right to do. *See* **Ex. A** (Ver. Complaint) at ¶ 46 and **Ex. 12** thereto.

USA Halal will suffer significant and irreparable harm if Best Choice Meats is allowed to continue using its Trademarks without authorization. Not only is USA Halal receiving no compensation for that use, but Best Choice Meats is diluting the value of its Trademarks and misrepresenting to consumers that Best Choice Meats' products are certified by USA Halal. Further, USA Halal can no longer verify that Best Choice Meats' products are compliant with Halal standards, and to the extent those products are not compliant, the value of the Trademarks will be undermined as consumers will no longer rely on them as indicators that a product bearing a USA Halal's Trademarks complies with Halal standards.

Conversely, Best Choice Meats cannot assert that it would suffer any cognizable harm if it is ordered to cease using Trademarks that it has no right to use and that it has admitted it has no right to use. In fact, the day after USA Halal terminated its certification, Best Choice Meats told USA Halal that it had already contracted with another business that certifies Halal products. *Id.* at ¶ 40 and **Ex. 8** thereto. Best Choice Meats thus cannot plausibly claim that it will suffer any harm if it is prevented from using the Trademarks.

Accordingly, the balancing of equities test heavily favors USA Halal, and this Court should grant the injunctive relief requested by USA Halal.

**IV.    A temporary restraining order and preliminary injunction barring Best Choice Meats from further infringing upon or diluting USA Halal's Trademarks would serve the public interest.**

Finally, the temporary and preliminary relief sought by USA Halal would serve the public interest. Best Choice Meats' "interest" in continuing to use the Trademarks for free with no authorization by USA Halal serves no discernable public interest. On the other hand, the public has an overwhelming interest in being able to trust the Trademarks as USA Halal's assurance that the meat and poultry products displayed and offered for sale at grocery stores is Halal.

Best Choice Meats has not been certified by USA Halal since June 1, 2018, but it continues to use USA Halal's Trademarks, holding out to the public that (1) its products are certified by USA Halal and (2) its products are in fact Halal. *Id.* at ¶ 44, 47 and **Ex. 9** thereto. The first representation is certainly not true, as Best Choice Meats itself admits it is not authorized to use the Trademarks and has promised to remove the same from its products and Web site. *Id.* at ¶ 46 and **Ex. 12** thereto.

The second representation may also be false, as USA Halal has no way of verifying whether Best Choice Meats has maintained the standards that allowed it to first obtain USA Halal's initial Halal certification. If USA Halal is not granted immediate injunctive relief, there is a genuine risk

that consumers will buy meat and poultry that they believe complies with Halal standards but is not Halal at all. This Court should protect consumers from being misled by Trademarks wrongfully displayed on Best Choice Meats' products and Web site, especially when Best Choice Meats admits it has no right to use those Trademarks and promised over a month ago to desist from doing so.

WHEREFORE Plaintiff, USA-Halal Chamber of Commerce, Inc., respectfully requests an Order:

a.  Granting Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction against Defendant;

b.  Ordering that Defendant and its officers, agents, and employees immediately cease using any of Plaintiff's Trademarks, and remove them from any of its products, Web site, and any media promulgated by Defendant;

c.  Setting a hearing (or hearings) on the temporary restraining order and preliminary injunction as soon as is practicable; and

d.  For such other further relief as this Court deems just and proper.

Respectfully Submitted,

USA-HALAL     CHAMBER OF COMMERCE, INC.

By:  /s/ Scott Browdy
One of its Attorneys

Scott Browdy (ARDC No. 6208593)
Matthew J. Sheahin (ARDC No. 6243872)
Thomas Fox (ARDC No. 6326911)
Lavelle Law, Ltd.
1933 N. Meacham Road, Suite 600
Schaumburg, IL 60173
Phone: 847 705 7555
mseahin@lavellelaw.com
sbrowdy@lavellelaw.com
tfox@lavellelaw.com
S:\11501-11750\11524\Pleadings\Motion for TRO and Preliminary.Permanent Injunction.docx