UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| USA-HALAL CHAMBER OF COMMERCE, INC., a Maryland corporation | ) ) ) ) | |
| Plaintiff, | ) ) | 1:19 C 4693 Hon. Marvin E. Aspen |
| v. | ) ) ) | |
| BEST CHOICE MEATS, INC., an Illinois corporation | ) ) ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

MARVIN E. ASPEN, District Judge:

In 2015, Plaintiff USA-Halal Chamber of Commerce, Inc. ("USA Halal") began certifying meat products from Defendant Best Choice Meats, Inc. ("Best Choice") as halal. (Dkt. No. 1–1, Ex. 3 at 86.)[1] In general terms, a meat product is halal if it is slaughtered and prepared in accordance with Islamic law. The certification allowed Best Choice to use certain USA Halal trademarks on its products to indicate their status as halal. (Dkt. No. 14–1, Ex. 3 ("Terms of Service") at 50–51.) USA Halal eventually terminated Best Choice's certification and notified it that it could no longer use USA Halal's trademarks. (Dkt. No 1–1, Ex. 7 at 118–20.) Despite this notice, Best Choice used a mark on its products and website similar to one of USA Halal's trademarks. (*Id.*, Ex. 12 at 132–33; *see also* Decl. of Jihad El-Kareh, ("El-Kareh Decl.") (Dkt. No. 13–1) ¶¶ 9, 43.) Presently before us is USA Halal's

---

[1] Because the parties filed their exhibits as a single document instead of separately, we cite the letter or number of each exhibit as the parties have referred to them. We also observe that USA Halal submitted the same exhibits in support of its motion for a preliminary injunction as it did with its complaint, including the complaint as an exhibit. For clarity, we cite to the exhibits attached to USA Halal's complaint.

motion for a temporary restraining order and preliminary injunction seeking to enjoin Best Choice from using its mark. (Mot. for Injunction ("Mot.") (Dkt. No. 5).) For the reasons set forth below, we grant USA Halal's motion.

## PRELIMINARY FACTS[2]

USA Halal inspects and certifies meat and poultry products as halal in exchange for a fee. (Compl. (Dkt. No. 1) ¶¶ 2–3, 17; *see also* USA-Halal Chamber of Commerce, Inc., *About Us*, https://www.ushalalcertification.com/about.html, (last visited July 31, 2019.)[3] As part of USA Halal's business, it has registered trademarks with the United States Patent and Trademark Office ("USPTO"). (Dkt. No. 1–1, Ex. 1 at 1–13.) One such mark is the letter "H" semi-encircled by a crescent moon with the following appearance:



("Crescent Moon Mark"). (*Id.* at 2.) USA Halal has used the Crescent Moon Mark in commerce since 1999 and registered it in 2013. (*Id.*) The mark is a "certification mark, as used by authorized persons, certif[ying] that the food products [bearing the mark] meet Islamic Halal

---

[2] "[T]he district judge, in considering a motion for preliminary injunction . . . must make factual determinations on the basis of a fair interpretation of the evidence before the court." *Darryl H. v. Coler*, 801 F.2d 893, 898 (7th Cir. 1986). However, these findings are preliminary and "do not bind the district court as the case progresses." *Mich. v. U.S. Army Corps of Eng'rs*, 667 F.3d 765, 782 (7th Cir. 2011).

[3] We "may take judicial notice of undisputed material hosted on a party's public website" *Newbold v. State Farm Mut. Auto. Ins. Co.*, No. 13 C 9131, 2015 WL 13658554, at *4 n.7 (N.D. Ill. Jan. 23, 2015) (citing *LaBella Winnetka, Inc. v. Vill. of Winnetka*, 628 F.3d 937, 944 n.3 (7th Cir. 2010)).

Guidelines." (*Id.*) In 2018, USA Halal had the mark declared "incontestable" under Section 15 of the Lanham Act.[4] (*Id.*, Ex. 2 at 15–26.)

Best Choice was founded in 2015 and distributes beef, lamb, chicken, and turkey products. (El-Kareh Decl. ¶¶ 2, 4.) On August 23, 2016, Best Choice applied to USA Halal to have its products certified. (Dkt. No. 1–1, Ex. 4 at 92–93.) The application was signed by Jihad El-Kareh, the founder, CEO, and President of Best Choice. (*Id.* at 93; El-Kareh Decl. ¶¶ 1–2.) Above El-Kareh's signature is a clause that states, "I hereby certify that . . . I have read and agreed to [USA Halal's] TERMS of SERVICE." (Dkt. No. 1–1, Ex. 4 at 93.) The Terms of Service in effect when El-Kareh signed the application includes a list and images of USA Halal's registered trademarks including its Crescent Moon Mark. (Aff. of Aly Ghanim (Dkt. No. 1–1) ¶ 3; Terms of Service at 51.)

Best Choice eventually became certified by USA Halal in 2016 and that same year, El-Kareh designed Best Choice's product packaging to include "a small crescent moon design." (El-Kareh Decl. ¶¶ 8–9.) El-Kareh asserts that when he designed the packaging he was "unaware of any trademark registration relating to a crescent and 'H' design" and was never informed about USA Halal's trademark rights until its complaint was filed. (*Id.* ¶¶ 13, 23–26.) The mark eventually included on Best Choice's packaging appears as follows:

 

(Dkt. No. 13–1, Ex. B at 8–9; *see also* Def.'s Resp. to Pl.'s Mot. for Injunction ("Resp.") (Dkt. No. 13) at 4, 13–14 (referring to "Ex. B" as examples of Best Choice's packaging).)

---

[4] A mark can be declared "incontestable" if it has been registered and "in continuous use for five consecutive years subsequent to the date of . . . registration." 15 U.S.C. § 1065.

In May 2018, USA Halal sent Best Choice a letter regarding its 2017 certification. (Dkt. No 1–1, Ex. 10 at 127–28, Ex. 6 at 116.) The letter stated that USA Halal did not receive any of Best Choice's monthly production reports, which are required to maintain certification. (*Id.*, Ex. 6 at 116.) The letter warned that without action, Best Choice's certification was subject to suspension and "[o]nce . . . certification is suspended . . . all of [USA Halal's] trademarked logos [could] no longer be [used]." (*Id.*) On September 18, 2018, USA Halal sent Best Choice another letter stating that its certification was "terminated," and that Best Choice needed to return its USA Halal certificate and "cease and desist from using [USA Halal's] registered logos and trademarks." (*Id.*, Ex. 7 at 118–19.) Best Choice responded the following day that it had destroyed its certificate and that "we do not now and have never used any [of USA Halal's] logos, graphics, designs, or trademarks, etc. in any [] way on any of [our] product packaging." (*Id.*, Ex. 8 at 122.)

Despite Best Choice's representations, on May 13, 2019, USA Halal informed Best Choice that it "c[ame] to [USA Halal's] attention that [Best Choice was] still displaying [the] certificate on [its] website" and requested that the certificate be immediately removed. (*Id.*, Ex. 12 at 133.) The following day, USA Halal informed Best Choice that it needed to remove its "products['] labels as well [because] they still ha[d] [USA Halal's] logo." (*Id.* at 132.) Nearly two months later, USA Halal filed its complaint and motion for a preliminary injunction seeking to enjoin Best Choice from using any of its trademarks. (Compl.; Mot.) Shortly thereafter, Best Choice removed the letter "H" crescent moon mark it was using from its website but has not removed the mark from its packaging. (El-Kareh Decl. ¶¶ 28, 43.) El-Kareh asserts that if enjoined, Best Choice would need to replace approximately $70,000 worth of packaging, which would take two to three weeks. (*Id.* ¶¶ 28, 30.) He also asserts that recalling already packaged

4

products and waiting for new packaging would cause spoliation of inventory and damage valuable customer relationships. (*Id.* ¶¶ 30, 33–34, 36, 38.)

## STANDARD OF REVIEW

"A preliminary injunction is an extraordinary and drastic remedy . . . that should not be granted unless the movant, *by a clear showing,* carries the burden of persuasion."[5] *Goodman v. Ill. Dep't of Fin. & Prof'l Regulation*, 430 F.3d 432, 437 (7th Cir. 2005) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972, 117 S. Ct. 1865, 1867 (1997)) (emphasis in original) (internal alteration omitted). We engage in a two-step analysis to determine if preliminary relief is warranted. *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S. of Am., Inc.*, 549 F.3d 1079, 1086 (7th Cir. 2008). First, we determine if the movant has a made a threshold showing "that it has some likelihood of success on the merits; that it has no adequate remedy at law; [and] that without relief it will suffer irreparable harm." *GEFT Outdoors, LLC v. City of Westfield*, 922 F.3d 357, 364 (7th Cir. 2019) (quotation omitted). "If the [movant] fails to meet any of these threshold requirements, the court 'must deny the injunction.'" *Id.* (quoting *Girl Scouts of Manitou Council, Inc.*, 549 F.3d at 1086). If, however, the movant meets the threshold requirements, we must "weigh[] the irreparable harm that the moving party would endure without the protection of the preliminary injunction against any irreparable harm the nonmoving party would suffer if the court were to grant the requested relief." *Girl Scouts of Manitou Council, Inc.*, 549 F.3d at 1086; *see also Eli Lilly & Co. v. Arla Foods, Inc.*, 893 F.3d 375, 381 (7th Cir. 2018). "This Circuit employs a sliding scale approach for this balancing: if a [movant] is more likely to win, the balance of harms can weigh less heavily in its favor, but the less likely

---

[5] The standards for granting a temporary restraining order and preliminary injunction are the same. *Gray v. Orr*, 4 F. Supp. 3d 984, 989 n.2 (N.D. Ill. 2013); *Long v. Bd. of Educ., Dist. 128*, 167 F. Supp. 2d 988, 990 (N.D. Ill. 2001); *Crue v. Aiken*, 137 F. Supp. 2d 1076, 1082 (C.D. Ill. 2001).

a [movant] is to win the more that balance would need to weigh in its favor." *GEFT Outdoors, LLC*, 922 F.3d at 364 (quotation omitted). Finally, we "must also consider the public interest in granting or denying an injunction." *Stuller, Inc. v. Steak N Shake Enters., Inc.*, 695 F.3d 676, 678 (7th Cir. 2012).

## ANALYSIS

USA Halal argues that Best Choice should be enjoined from using its Crescent Moon Mark because it will likely be successful on the merits given the protected status of its mark. (Mot. at 8–9.) It also argues that it will suffer irreparable harm without an injunction because it cannot verify whether Best Choice's products meet its certification standards, which could damage the credibility of its certifications. (*Id.* at 10–11; Pl.'s Reply to Def.'s Resp. to Pl.'s Mot. for Injunction ("Reply") (Dkt. No. 14) at 8–9.) USA Halal argues that this harm outweighs any harm Best Choice would suffer by having to stop using its mark. (Mot. at 11–12.) Best Choice responds that preliminary relief is not warranted because USA Halal has failed to present evidence of irreparable harm and an injunction would cause Best Choice substantial income and inventory loss and severely damage its customer relationships. (Resp. at 7–12.) Best Choice also argues that USA Halal has failed to demonstrate a likelihood of success on the merits because the mark it uses is different than USA Halal's Crescent Moon Mark and USA Halal has failed to show that any consumers have been confused by the two marks. (*Id.* at 14.)

## I. LIKELIHOOD OF SUCCESS ON THE MERITS

We first address whether USA Halal has demonstrated a likelihood of success on its trademark infringement claim.[6] "A party moving for preliminary injunctive relief need not demonstrate a likelihood of absolute success on the merits. Instead, [it] must only show that [its]

---

[6] While USA Halal has brought several other claims (*see* Compl.), we focus on trademark infringement because that is the focus of USA Halal's motion and the parties' briefing.

6

chances to succeed on [its] claims are better than negligible[,]" which is a "low threshold." *Whitaker By Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1046 (7th Cir. 2017) (quotation and citations omitted). We assess "how likely" USA Halal's success is "after we clear the threshold inquiries and proceed to the balancing phase of the analysis." *Girl Scouts of Manitou Council, Inc.*, 549 F.3d at 1096. To succeed on a trademark infringement claim, the plaintiff must show "(1) that its mark is protectable, and (2) that the defendant's use of that mark is likely to cause confusion among consumers." *Phx. Entm't Partners v. Rumsey*, 829 F.3d 817, 822 (7th Cir. 2016).

### A. Protectability

USA Halal argues that its Crescent Moon Mark is protectable because it is registered and incontestable. (Mot. at 8–9.) Best Choice argues that USA Halal's mark is not protectable because it is generic. (Resp. at 14–15.) It argues that crescent moons and the letter "H" are "commonly used in association with [h]alal marks" and submits examples of various halal trademarks as evidence. (*Id.* at 15; Dkt. No. 13–1, Ex. E at 18–35.)

A registered mark is "prima facie evidence of the validity of the . . . mark . . . and of the registrant's exclusive right to use the mark in commerce." *Packman v. Chi. Tribune Co.*, 267 F.3d 628, 638 (7th Cir. 2001) (quoting 15 U.S.C. § 1115(a)). Registration also affords plaintiffs a presumption that the mark is either not generic or has acquired secondary meaning. *Packman*, 267 F.3d at 638. After a mark has been used for five consecutive years following registration, it becomes "incontestable." *Eco Mfg. LLC. v. Honeywell Int'l, Inc.*, 357 F.3d 649, 651 (7th Cir. 2003) (citing 15 U.S.C. § 1065). "Incontestability is 'conclusive evidence of the validity of the registered mark and . . . the registrant's exclusive right' to use the mark in commerce." *Eco Mfg. LLC.*, 357 F.3d at 651 (quoting 15 U.S.C. § 1115(b)). Despite a mark's registered or incontestable status, trademarks may still be cancelled if they become

7

generic. *Eco Mfg. LLC.*, 357 F.3d at 651. "A generic mark is 'one that is commonly used and does not identify any particular source.'" *Black & Decker Corp. v. Positec USA Inc.*, No. 11 C 5426, 2015 WL 1543262, at *31 (N.D. Ill. Mar. 31, 2015) (quoting *Platinum Home Mortg. Corp. v. Platinum Fin. Grp., Inc.*, 149 F.3d 722, 727 (7th Cir. 1998)).

We find that USA Halal has sufficiently demonstrated its Crescent Moon Mark is likely protectable. USA Halal has been using the mark in commerce since 1999 and registered it with USPTO in 2013. (Dkt. No. 1–1, Ex. 1 at 2.) After five consecutive years of registration, USA Halal had the mark properly declared incontestable under Section 15 of the Lanham Act. (*Id.*, Ex. 2 at 15–26; *see also* 15 U.S.C. § 1065.) While incontestability is not ironclad, Best Choice has done little to overcome the presumption that USA Halal's trademark is valid and not generic. We have examined the examples of allegedly similar marks (*see* Dkt. No. 13–1, Ex. E at 18–35), and none demonstrate that USA Halal's Crescent Moon Mark is common. While many of the marks utilize a crescent moon, only one uses the letter "H" standing alone and none utilize a crescent moon and a standalone letter "H" together.[7] Thus, we find that USA Halal's Crescent Moon Mark is likely protectable.

### B. Likelihood of Confusion

Having concluded that USA Halal's Crescent Moon Mark is likely protectable, we turn next to whether consumers will likely be confused by USA Halal's mark and Best Choice's use of a letter "H" semi-encircled by a crescent moon. Best Choice argues that consumer confusion is unlikely because its mark is not identical to USA Halal's and it was unaware of USA Halal's trademark rights. (Resp. at 14.) It also argues that USA Halal has not met its burden because it has not presented evidence of actual consumer confusion. (*Id.*) USA Halal responds that it is

---

[7] While one symbol has the letter "H" encased in a partial circle, the symbol is different because the "H" is lowercase and the partial circle is not a crescent moon. (*Id.* at 18.)

not required to present evidence of actual confusion and Best Choice has no basis to claim it was unaware of USA Halal's trademark rights because they are outlined in its Terms of Service. (Reply at 3–4.)

Courts consider the following factors when assessing consumers' potential confusion: "(1) the similarity between the marks in appearance and suggestion; (2) similarity of the products; (3) the area and manner of concurrent use; (4) the degree and care likely to be exercised by consumers; (5) the strength of the plaintiff's mark; (6) whether actual confusion exists; and (7) whether the defendant intended to 'palm off' his product as that of the plaintiff." *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 677–78 (7th Cir. 2001). "No single factor is dispositive" and we "may assign varying weight to each of the factors depending on the facts presented, though usually the similarity of the marks, the defendant's intent, and actual confusion are particularly important." *AutoZone, Inc. v. Strick*, 543 F.3d 923, 929 (7th Cir. 2008).

The majority of the seven factors weigh in USA Halal's favor. The similarity in USA Halal's Crescent Moon Mark and the mark utilized by Best Choice is unmistakable. Best Choice argues that the marks are different because its "H" is in a different font and its crescent moon is at a different angle. (Resp. at 4, 14.) However, these slight differences are hard to notice unless the marks are examined side-by-side. (*Compare* Dkt. No. 1–1, Ex. 2 at 25 (showing USA Halal's mark as used by a certified customer) *with id.*, Ex. 11 at 130 (showing Best Choice's use of its mark).) Further, the products bearing USA Halal's Crescent Moon Mark and Best Choice's mark are extremely similar in that they are both meat and poultry products. (*See* El-Kareh Decl. ¶¶ 4, 9; Dkt. No. 13–1, Ex. B at 8–10; Dkt. No. 1–1, Ex. 2 at 23–25.) The manner of use of the marks is also similar. USA Halal uses its Crescent Moon Mark to show that the products bearing the mark meet Islamic halal guidelines. (Dkt. No. 1–1, Ex. 1 at 2.) Best Choice admits that it uses its mark to indicate the same. (*See* El-Kareh Decl. ¶¶ 9–10 (stating

that when he designed Best Choice's packaging, he "understood the crescent and 'H' design on [its] packaging to be a generic indication of [h]alal products").)

Best Choice has tried to argue that there was no intent to copy USA Halal's Crescent Moon Mark because El-Kareh was unaware of USA Halal's trademark rights. (Resp. at 14.) Even if true, this alone does not eliminate the likelihood of confusion or somehow defeat USA Halal's infringement claim. "[R]egistration serves as 'constructive notice of the registrant's claim of ownership.'" *Iancu v. Brunetti*, 139 S. Ct. 2294, 2297–98 (2019) (quoting 15 U.S.C. § 1072). It is "intended to protect against users of the registrant's trademark who might otherwise raise a defense of innocent misappropriation." *Mobile Anesthesiologists Chi., LLC v. Anesthesia Assocs. of Hous. Metroplex, P.A.*, 623 F.3d 440, 446 (7th Cir. 2010); *see also In re Int'l Flavors & Fragrances, Inc.*, 183 F.3d 1361, 1367 (Fed. Cir. 1999) ("Registration . . . prevents another user of the mark from claiming innocent misappropriation as a trademark infringement defense") (collecting cases). Thus, El-Kareh's claim of innocent misappropriation is unavailing.

The only factor that might weigh in favor of Best Choice is the degree of care likely to be exercised by consumers. While neither party has presented evidence regarding this factor, it is logical that consumers who choose to buy halal for religious or other purposes will carefully select products to make sure they are truly halal. However, this factor is largely negated by the fact that the mark used by Best Choice appears very similar to USA Halal's Crescent Moon Mark.

The remaining factors are largely neutral absent a more developed record. USA Halal has not presented evidence of any actual consumer confusion, but this is not required. *Uncommon, LLC v. Spigen, Inc.*, 926 F.3d 409, 427 (7th Cir. 2019) ("[E]vidence of actual consumer confusion . . . is not a hard-and-fast requirement"); *see also Trans Union LLC v. Credit*

*Research, Inc.*, 142 F. Supp. 2d 1029, 1043 (N.D. Ill. 2001) ("[A]t this stage of the litigation the lack of any such evidence is neither surprising nor fatal to [Plaintiff's] motion [for preliminary relief]."). USA Halal has also not presented a great deal of evidence regarding the strength of its mark. *See AutoZone*, 543 F.3d at 933 (noting that the "strength of a mark usually corresponds to its economic and marketing strength" which can be assessed by evaluating frequency of the mark and amount of money spent advertising the mark). However, because most of the confusion factors weigh in USA Halal's favor and it has presented evidence regarding the protectability of its Crescent Moon Mark, we find that USA Halal is likely to be successful on the merits of its trademark infringement claim.

## II. IRREPARABLE HARM AND ADEQUACY OF REMEDY AT LAW

In addition to a likelihood of success on the merits, USA Halal must also show that it will suffer irreparable harm absent an injunction and that it has no adequate remedy at law. *GEFT Outdoors, LLC*, 922 F.3d at 364. "[H]arm is considered irreparable if it 'cannot be prevented or fully rectified by the final judgment after trial.'" *Whitaker By Whitaker*, 858 F.3d at 1045 (quoting *Girl Scouts of Manitou Council, Inc.*, 549 F.3d at 1089)). The harm cited by a movant "must . . . be likely" meaning "there must be more than a mere possibility that . . . harm will come to pass." *Mich. v. U.S. Army Corps of Eng'rs*, 667 F.3d 765, 788 (7th Cir. 2011). However, "the alleged harm need not be occurring or be certain to occur before a court may grant relief." *Id.* A remedy at law is inadequate if damages would not rectify the harm complained of. *Snyder v. Ocwen Loan Servicing, LLC*, 258 F. Supp. 3d 893, 913 (N.D. Ill. 2017).

### A. Presumption of Irreparable Harm

The parties argue at great length whether irreparable harm must be presumed in trademark infringement cases. (Resp. at 7–8; Reply at 5–6.) Some circuits have concluded that

irreparable harm is not presumed because of the Supreme Court's holding in *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 126 S. Ct. 1837 (2006), which overturned a similar presumption in patent cases. *See, e.g., Ferring Pharm., Inc. v. Watson Pharm., Inc.*, 765 F.3d 205, 217 (3d Cir. 2014) (overruling presumption); *Herb Reed Enters., LLC v. Fla. Entm't Mgmt., Inc.*, 736 F.3d 1239, 1249 (9th Cir. 2013) (same). The Seventh Circuit has not addressed the issue and Illinois district courts have not uniformly applied the presumption. *See, e.g., Checker Car Club of Am., Inc. v. Fay*, 262 F. Supp. 3d 621, 629 (N.D. Ill. 2017) (following presumption but finding it overcome); *Luxottica Grp. S.p.A. v. Light in the Box Ltd.*, No. 16 C 05314, 2016 WL 6092636, at *5 (N.D. Ill. Oct. 19, 2016) (collecting cases on use and non-use of presumption); *Nat'l Fin. Partners Corp. v. Paycom Software, Inc.*, No. 14 C 7424, 2015 WL 3633987, at *11 (N.D. Ill. June 10, 2015) (not following presumption). While there is an inconsistency within our circuit regarding the presumption, we do not need to answer this question here because USA Halal has shown a likelihood of irreparable harm without it.

### B. Irreparable Harm and Inadequacy of Legal Remedy

USA Halal's main complaint is that without an injunction, there is a real risk that Best Choice will use its Crescent Moon Mark on products that do not meet USA Halal's certification standards, thereby damaging its reputation and the credibility of its certifications and trademarks. (Mot. at 10–11.) Best Choice responds that the harms cited by USA Halal are completely hypothetical and do not relate to particular and immediate harms especially because Best Choice's products are certified as halal by another company. (Resp. at 9–10.)

We find that USA Halal's inability to monitor the quality of Best Choice's products before Best Choice brands them with a mark very similar to USA Halal's Crescent Moon Mark represents a real harm that is not merely hypothetical. The Seventh Circuit has "repeatedly held that damage to a trademark holder's goodwill can constitute irreparable injury for which the

trademark owner has no adequate legal remedy." *Re/Max N. Cent., Inc. v. Cook*, 272 F.3d 424, 432 (7th Cir. 2001) (citing cases). Indeed, the "most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality of the defendants' goods." *Id.* (quoting *Int'l Kennel Club of Chi., Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1092 (7th Cir. 1988)); *see also Keystone Consol. Indus., Inc. v. Mid-States Distrib. Co.*, 235 F. Supp. 2d 901, 915 (C.D. Ill. 2002) (finding irreparable harm to plaintiff's "business reputation through association of [d]efendants' products with its name"). Here, USA Halal has lost any ability to ensure that the products Best Choice sells meet its certification standards. The fact that Best Choice's products are being certified by another company and may be of high quality makes no difference. *See Re/Max N. Cent., Inc.*, 272 F.3d at 432 ("Even if the infringer's products are of high quality, the plaintiff can properly insist that its reputation should not be imperiled by the acts of another" (quotation omitted)).

Irreparable harm also stems from the nature of USA Halal's business and the purpose of its Crescent Moon Mark. USA Halal certifies meat and poultry products as halal through audits and inspections of producers' facilities. (Dkt. No. 1–1, Ex. 3 at 86.) Once a producer is certified, it gains the benefit of being able to display USA Halal's trademarks, which indicate a product's status as USA Halal certified. (*See* Terms of Service at 51; Dkt. No. 1–1, Ex. 1 at 2.) The Crescent Moon Mark is also designed for the specific purpose of notifying third parties that the products bearing the mark meet Islamic halal guidelines. (Dkt. No 1–1, Ex. 1 at 2.) There is little doubt that allowing third parties to slap USA Halal's trademark or a similarly confusing mark on its products when USA Halal has not certified them represents a real harm to USA Halal's business that is difficult to quantify.

The similarity of USA Halal's Crescent Moon Mark to the one used by Best Choice, and the way both are employed, is also probative of irreparable harm. *See Ideal Indus.,*

13

*Inc. v. Gardner Bender, Inc.*, 612 F.2d 1018, 1025 (7th Cir. 1979) ("The existence of irreparable injury is positively supported by the fact that the alleged trademark and the infringing use are identical, that the products are the same, and that the markets are the same.") The mark used by Best Choice is nearly identical to USA Halal's Crescent Moon Mark, and Best Choice is using it in a similar way and on similar products that only those certified by USA Halal are allowed. All the preceding factors weigh in support of irreparable harm that cannot be fully rectified by mere money damages. Thus, we find that USA Halal has met its burden of showing irreparable harm and lack of an adequate remedy at law.

### C. Delay in Enforcing Rights

To defeat USA Halal's claim of irreparable harm, Best Choice argues that USA Halal inexcusably delayed in seeking to enforce its rights. (Resp. at 8–9.) USA Halal responds that any delays are attributable to Best Choice's written representation that it was not using any of USA Halal's trademarks. (Reply at 6–7.)

Best Choice is correct that a "[d]elay in pursuing a preliminary injunction may raise questions regarding the plaintiff's claim that he or she will face irreparable harm." *Ty, Inc. v. Jones Grp., Inc.*, 237 F.3d 891, 903 (7th Cir. 2001). However, delay is not dispositive of a lack of irreparable harm. *Ideal Indus., Inc. v. Gardner Bender, Inc.*, 612 F.2d 1018, 1025 (7th Cir. 1979). "Whether the defendant has been 'lulled into a false sense of security or . . . acted in reliance on the plaintiff's delay' influences whether [courts] will find that a plaintiff's decision to delay in moving for a preliminary injunction is acceptable or not." *Ty, Inc.*, 237 F.3d at 903 (quoting *Ideal Indus., Inc.*, 612 F.2d at 1025). Delay is also generally measured from the time the plaintiff discovers the infringement. *See Redbox Automated Retail, LLC v. Xpress Retail LLC*, 310 F. Supp. 3d 949, 953 (N.D. Ill. 2018) (measuring delay from the time Redbox "learned of [defendant's] red kiosks"); *Checker Car Club of Am., Inc.*,

14

262 F. Supp. 3d at 629 ("Here, plaintiff has been *aware* of defendants alleged infringing conduct for more than a year" (emphasis added)); *Nat'l Fin. Partners Corp.*, 2015 WL 3633987, at *13 (measuring delay from time plaintiff became aware of defendant's logo).

We find that the timing of USA Halal's motion for a preliminary injunction does not defeat its claim of irreparable harm. USA Halal did not officially terminate Best Choice's certification until September 2018 when it sent Best Choice its termination letter and notified Best Choice that a condition of termination was that it not use USA Halal's trademarks and return its certificate. (Dkt. No. 1–1, Ex. 7 at 118–19.) The following day, Best Choice assured USA Halal that it was not using any of USA Halal's trademarks. (*Id.*, Ex. 8 at 122.) Best Choice's representation cuts against any inference that Best Choice was lured into a false sense of security or that it relied on USA Halal's actions when determining whether to continue using the letter "H" mark semi-encircled by a crescent moon. It was not until May 14, 2019, months after termination, that USA Halal recognized Best Choice was still using its mark without an active certification and requested that it stop. (*Id.*, Ex. 12 at 132.) USA Halal filed its motion for preliminary relief one month and 28 days later. Courts generally infer a lack of irreparable harm only after longer delays. *See, e.g.*, *Checker Car Club of Am., Inc.*, 262 F. Supp. 3d at 629 (over a year); *Redbox Automated Retail, LLC*, 310 F. Supp. 3d at 953 (eighteen months); *Ixmation, Inc. v. Switch Bulb Co., Inc.*, No. 14 C 6993, 2014 WL 5420273, at *8 (N.D. Ill. Oct. 23, 2014) (four and a half months); *Borden, Inc. v. Kraft, Inc.*, No. 84 C 5295, 1984 WL 1458, at *16 (N.D. Ill. Sept. 28, 1984) (five months). Thus, we find that USA Halal's delay of one month and 28 days does not diminish USA Halal's claim of irreparable harm.

### III. BALANCE OF HARMS AND THE PUBLIC INTEREST

We must now balance USA Halal's harms if an injunction were not granted against the harm Best Choice would suffer if an injunction were granted. *Girl Scouts of Manitou Council,*

15

*Inc.*, 549 F.3d at 1086. This balancing is assessed on a sliding scale whereby the more likely USA Halal is to succeed on the merits, the less heavily the balance needs to weigh in its favor. *GEFT Outdoors, LLC*, 922 F.3d at 364. This inquiry is designed, in part, to minimize the cost of courts' potential to be ultimately mistaken in whether to grant preliminary relief. *See Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 12 (7th Cir. 1992). We must also consider the public interest in granting or denying an injunction. *Stuller, Inc.*, 695 F.3d at 678.

USA Halal argues that the balance weighs in its favor because the only harm Best Choice would suffer if enjoined would be removing the letter "H" crescent moon mark from its products. (Mot. at 11–12.) Best Choice argues that an injunction would cause substantial loss of income because it would need to recall existing products, repackage already packaged products, and wait two to three weeks for new packaging, which could cause inventory to spoil. (Resp. at 11; El-Kareh Decl. ¶¶ 30, 33–34, 38.)

We conclude that the balance weighs in USA Halal's favor. Our conclusion is guided by USA Halal's strong case for ultimate success on the merits. As discussed above, USA Halal's Crescent Moon Mark is registered, incontestable, and has been used in commerce since 1999. *Supra* I.A. Best Choice has done little to convince us that USA Halal's mark might be generic. Further, the resemblance of USA Halal's and Best Choice's marks, the parallel markets in which they appear, the similarity of the products that bear the marks, and the ultimate purpose of the marks all demonstrate a substantial likelihood of confusion. Thus, the balance of harms need not weigh extraordinarily heavy in USA Halal's favor. *See Ty, Inc.*, 237 F.3d at 903 ("[L]ikelihood of success on the merits was not slight and accordingly there was no need for [plaintiff] to make a proportionately stronger showing that the balance of the harms was in its favor.").

The harm endured by USA Halal in having a third party place a nearly identical mark on products not certified by USA Halal is not outweighed by the harms cited by defendant. Best

Choice complains that an injunction would cause damage through recall of already packaged products and having to wait two to three weeks for new packaging, which could cause spoliation of inventory, delay in delivery of products, and hurt business relationships. (Resp. at 11–12; El-Kareh Decl. ¶¶ 28, 30, 33–34, 36–38.) We recognize that these harms do not amount to nothing. However, we do not see a two to three week delay as overly burdensome given the merits of USA Halal's case. Notably, this is not situation where entry of a preliminary injunction would halt Best Choice's business altogether. Best Choice would still be able to distribute meat products and would still be able to claim to consumers that its products are halal because, as it repeatedly points out, it is being certified by another entity. (Dkt. No. 13–1, Ex. C at 12–14.)

We also find that Best Choice's claims of harm are diminished by its decision to continue using its letter "H" crescent moon mark after being notified that it must cease using all USA Halal's trademarks and affirmatively representing that it was not doing so. When USA Halal notified Best Choice in September 2018 that its certification was cancelled, its cancellation letter clearly informed Best Choice that it must "cease and desist from using [its] registered logos and trademarks." (Dkt. No. 1–1, Ex. 7 at 118–19.) Upon receipt of this letter Best Choice was put on notice that it could not use USA Halal's marks and could have taken steps to change its packaging. While El-Kareh claims that he was completely unaware of USA Halal's trademark rights until the complaint was filed, Best Choice should have investigated its potential infringement before affirmatively representing to USA Halal that "we do not now and have never used any [USA Halal's] logos, graphics, trademarks, etc." (*Id.*, Ex. 8 at 122.) *See Iancu*, 139 S. Ct. 2294, 2297–98 (2019) ("registration serves as constructive notice" (quotation omitted)); *Ty, Inc.*, 237 F.3d at 903 (balance of harms weighed in plaintiff's favor where cease and desist letter put defendant on notice that it may face legal challenges); *Ideal Indus., Inc.*, 612 F.2d at 1026 ("One entering a field already occupied by another has a duty to select a

17

trademark that will avoid confusion."). Thus, we conclude that the balance of harms weighs in USA Halal's favor.

Finally, the public interests would also be served by an injunction "because enforcement of the trademark laws prevents consumer confusion." *Eli Lilly & Co. v. Nat. Answers, Inc.*, 233 F.3d 456, 469 (7th Cir. 2000); *see also Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 193, 105 S. Ct. 658, 661 (1985) ("Because trademarks desirably promote competition and the maintenance of product quality, Congress determined that a sound public policy requires that trademarks should receive nationally the greatest protection that can be given them." (quotation omitted)); *Stahly, Inc. v. M. H. Jacobs Co.*, 183 F.2d 914, 917 (7th Cir. 1950) ("It must be remembered that the trade-mark laws . . . are concerned not alone with the protection of a property right existing in an individual, but also with the protection of the public from fraud and deceit."). Here the public has an interest in being able to purchase food products that are not misrepresented. USA Halal's Crescent Moon Mark is designed to indicate that the food bearing the mark was certified by USA Halal according to its certification standards. The public would be served by no longer allowing Best Choice to represent through the use of its mark that its products are USA Halal certified when they are not.

## IV. BOND

Because USA Halal is entitled to preliminary relief, we must consider the appropriate security that USA Halal should be required to post. Pursuant to Federal Rule of Civil Procedure 65(c), we may "issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party [later] found to have been wrongfully enjoined or restrained." *See also Ty, Inc.*, 292 F.3d at 516 ("The purpose of an injunction bond is to compensate the defendant, in the event he prevails on the merits."). "The appropriate amount of the bond is subject to the court's discretion." *Monster*

*Energy Co. v. Wensheng*, 136 F. Supp. 3d 897, 910 (N.D. Ill. 2015) (citing Fed. R. Civ. P. 65(c); *Gateway E. Ry. Co. v. Terminal R.R. Ass'n of St. Louis,* 35 F.3d 1134, 1141 (7th Cir.1994)). However, the Seventh Circuit cautions us to "err on the high side" because "the damages for an erroneous preliminary injunction cannot exceed the amount of the bond." *Mead Johnson & Co. v. Abbott Labs.*, 201 F.3d 883, 888 (7th Cir. 2000).

While Best Choice has not clearly identified its total estimated monetary damages if enjoined from using its letter "H" crescent moon mark, El-Kareh has provided some indication of losses. He asserts that Best Choice: (1) has approximately six months of packaging inventory worth "in excess of $70,000"; (2) it will take "at least two to three weeks to order and receive new packaging"; (3) it will suffer losses by having to recall already packaged products; (4) "[d]elays in shipment of products can result in in spoliation of inventory"; and (5) "Each week Best Choice generally distributes at least tens of thousands of dollars' worth of products." (El-Kareh Decl. ¶¶ 28, 30, 33, 38–39.)

Based on this testimony we find that an appropriate bond is $95,000. This amount is designed to cover the redesign and purchase of potentially unnecessary packaging and the potential loss of inventory. We observe that while El-Kareh asserts it distributes tens of thousands of dollars' worth of products each week, he does not assert that all Best Choice's inventory would be lost or that it would actually lose tens of thousands of dollars' worth of products if enjoined from using its letter "H" crescent moon mark. Further, as indicated below, we are not requiring Best Choice to recall or destroy already shipped products or repackage products for orders that have already been placed.

## CONCLUSION

For the foregoing reasons, USA Halal's motion is granted.[8] The preliminary injunction shall apply as follows:

1) Best Choice is enjoined from using USA Halal's Crescent Moon Mark (Registration No. 4,311,881) or any mark that is in any way similar to the image of a letter "H" semi-encircled by a crescent moon on any of its packaging, website, or other promotional materials.

2) Best Choice does not need to recall any products that have been sold and shipped as of August 14, 2019.

3) Best Choice may ship already packaged meat products to fill orders received as of August 14, 2019 at 5:00 p.m. but not any orders thereafter. Best Choice is ordered to submit, under seal, a listing of such orders by August 26, 2019.

4) USA Halal shall post a security in the amount of $95,000 by August 26, 2019.

It is so ordered.

_____
Honorable Marvin E. Aspen
United States District Judge

Dated: August 14, 2019
       Chicago, Illinois

---

[8] We have received USA Halal's motion for expediated discovery that was filed for the purpose of "prepar[ing] for the anticipated hearing of its sought preliminary injunction." (Dkt. No. 20 ¶ 7.) Because we grant USA Halal's motion for a preliminary injunction, we deny this motion as moot.